# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINE BERNSTEIN,**<br>                    Plaintiff, | **CIVIL ACTION** |
| v. | |
| **KEAVENEY LEGAL GROUP,**<br>**JAMES P. KEAVENEY, ESQUIRE, and**<br>**JOSHUA THOMAS, ESQUIRE,**<br>                    Defendants. | **NO. 16-5470** |

**DuBois, J.**                                                                                                                    **May 17, 2017**

## M E M O R A N D U M

### I.     INTRODUCTION

This is a legal malpractice and fraud case. The case arises out of plaintiff Christine Bernstein's interactions with Keaveney Legal Group ("KLG"), which provided plaintiff with legal assistance relating to a foreclosure action. Plaintiff asserts claims against defendants KLG, James P. Keaveney, Esquire, and Joshua Thomas, Esquire, based on violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), common law fraud, and violations of the federal Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"); and claims against James P. Keaveney, Esquire, and Joshua Thomas, Esquire, for legal malpractice. Presently before the Court is Defendants, Keaveney Legal Group, James P. Keaveney, Esquire, and Joshua Thomas Esquire's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

For the reasons that follow, the Court grants in part and denies in part defendants' Motion to Dismiss.

## II. BACKGROUND

The relevant facts as alleged in plaintiff's Amended Complaint are as follows.[1] A foreclosure action relating to plaintiff's home was filed on January 17, 2014. Am. Compl. ¶ 30. Plaintiff learned of KLG's foreclosure services by way of an advertisement on the internet sometime in early January of 2014. Am. Compl. ¶ 22. On January 7, 2014, plaintiff met with Antonio Romero, "a salesperson from the KLG" who was "an agent of the Defendants," at an office in Philadelphia. Am. Compl. ¶¶ 23–24. Romero "showed Plaintiff a video describing the difficulty for a homeowner to secure a loan modification on their own" and "informed Plaintiff that attorneys were the only ones that could communicate with the bank at [that] point." Am. Compl. ¶¶ 26, 30. Romero also "indicated that the KLG would be able to secure a loan modification for Plaintiff," and stated that "some people receive a loan modification as quickly as two months." Am. Compl. ¶¶ 28, 31. Plaintiff "believed [it] was a fact, that she could not obtain a loan modification without the assistance of a law firm"—indeed, "Romero had Plaintiff convinced that if she did not retain the services of the KLG she would lose her home to foreclosure." Am. Compl. ¶¶ 27, 32.

Plaintiff ultimately entered into a "Representation Agreement on Foreclosure Defense" under which plaintiff agreed to an initial payment of $1,500 and a monthly fee of $695, to be billed automatically "until the conclusion of the case." Am. Compl. ¶¶ 34, 35, 37. All of these payments were nonrefundable. Am. Compl. ¶ 36. Plaintiff paid KLG a total of $8,195 in legal fees. Am. Compl. ¶ 38.

---

[1] Plaintiff argues that defendants' Motion "attempt[s] to improperly augment the record by adding numerous additional facts not alleged by Plaintiff." Resp. at 1. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court's decision is based solely on the facts as alleged in the Amended Complaint.

"Plaintiff immediately provided to Defendants the requested documents required to submit an application for loan modification." Am. Compl. ¶ 39. Defendant Thomas entered his appearance in plaintiff's foreclosure action on February 27, 2014, and filed an Answer to the Foreclosure Complaint on March 14, 2014. Am. Compl. ¶¶ 45–46. Santander, plaintiff's foreclosure servicer, filed a Motion for Summary Judgment against plaintiff on October 24, 2014. Am. Compl. ¶¶ 51. The court granted the Motion for Summary Judgment on December 9, 2014, and Santander filed a Praecipe to Enter Judgment on December 26, 2014. Am. Compl. ¶¶ 55–56. Defendants did not inform plaintiff that the Motion for Summary Judgment had been filed, that the court had granted the Motion, or that the Praecipe to Enter Judgment had been filed. Am. Compl. ¶¶ 51, 55–56.

Meanwhile, on December 15, 2014, defendants informed plaintiff that they "finally submitted" her application for a loan modification to the servicer. Am. Compl. ¶ 54. On December 27, 2014, plaintiff received a "surprise" notice of sheriff's sale of her home. Am. Compl. ¶ 57. Plaintiff then contacted Santander to inquire about the status of her loan modification application. Am. Compl. ¶ 59. Santander told plaintiff that its only contact with defendants regarding plaintiff's loan was a notification from defendants informing Santander that defendants were representing plaintiff. Am. Compl. ¶¶ 59–60. Defendants had never submitted to Santander a loan modification application on plaintiff's behalf. Am. Compl. ¶¶ 59–60.

On her own, plaintiff submitted a loan modification application to Santander, which was acknowledged on January 2, 2015, and granted on February 27, 2015. Am. Compl. ¶¶ 58, 61. Plaintiff sold her home in April 2015 because of the fees that had accrued on her mortgage, and because she took a job in Massachusetts. Am. Compl. ¶ 62. Plaintiff sold the home for "a

3

significantly lower price" than she would have obtained if it were not in foreclosure. Am. Compl. ¶ 63.

Plaintiff filed her original Complaint on October 16, 2016. Defendants filed a Motion to Dismiss the Complaint on December 30, 2016, and plaintiff filed an Amended Complaint on January 20, 2017. Defendants filed a Motion to Dismiss the Amended Complaint on February 21, 2017; plaintiffs filed a Response in Opposition to the Motion to Dismiss on March 31, 2017; and on April 14, 2017, defendants filed a Reply in Support of the Motion to Dismiss.

For the reasons set forth below, the Court grants in part and denies in part defendants' Motion.

### III. DISCUSSION

#### A. Applicable Law

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff[']s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

B.  <u>Count I: Pennsylvania's Unfair Trade Practices and Consumer Protection Law</u>

Count I of the Amended Complaint alleges that all defendants violated the UTPCPL by making various false and misleading statements in their advertising and communications with plaintiff.  Defendants argue that attorneys are exempt from UTPCPL liability when they are engaged in the practice of law.  The Court agrees; however, because plaintiff has pointed to non-attorney actions that can be imputed to KLG, the Court grants in part and denies in part defendants' Motion as to Count I.

The Supreme Court of Pennsylvania has exclusive authority to regulate the practice of law in Pennsylvania, and has held that attorneys cannot be liable under the UTPCPL when "Pennsylvania's Rules of Professional Conduct and Rules of Disciplinary Enforcement exclusively address the conduct complained of."  *Beyers v. Richmond*, 937 A.2d 1082, 1092 (Pa. 2007).  Plaintiff concedes that *Beyers* precludes liability for "actions by the Attorney Defendants [which] constitute violations of the Pennsylvania Rules of Professional [Conduct]."  Resp. at 10.  Following *Beyers*, the Court concludes that plaintiff cannot recover under Count I based on any allegations of attorney conduct which is exclusively governed by the Pennsylvania Rules of Professional Conduct and Rules of Disciplinary Enforcement.  The Court therefore grants defendants' Motion in part, and dismisses the claims against the individual attorney defendants in Count I based on their conduct as attorneys which is governed by the Pennsylvania Rules of Professional Conduct.

However, the Court denies defendants' Motion as to KLG.  Plaintiff argues that *Beyers* does not apply to bar a UTPCPL claim based on the misconduct of Romero because he is not a lawyer.  Resp. at 9–11.  Defendants counter, in their Reply, that Romero's misconduct is imputed to individual defendant Keaveney because a lawyer is responsible for a nonlawyer's conduct that

violates the Rules of Professional Conduct when the lawyer, *inter alia*, is a partner at the firm which employs the nonlawyer. Reply at 4; Pa. R.P.C. 5.3. Because individual defendant Keaveney is a named partner at KLG, under Rule 5.3, defendants argue that he is responsible for Romero's conduct if it violates Pennsylvania's Rules of Professional Conduct. Reply at 5.

However, even if Keaveney is responsible for Romero's misconduct under Rule 5.3, defendants' theory does not "exclusively address the conduct complained of." *Beyers*, 937 A.2d at 1092. Rather, Romero's alleged violations of the UTPCPL can be imputed to KLG under the theory of *respondeat superior*, which provides that "[a] master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment." *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. 1979); *see also* Restatement (Second) of Agency § 219. The Amended Complaint alleges that Romero is "a salesperson for the KLG" and "an agent of the Defendants." Am. Compl. ¶¶ 23–24. It further alleges that Romero's role was to "sell[] the services of the KLG." Am. Compl. ¶ 25. Therefore, although the Amended Complaint does not allege *respondeat superior* liability outright, the Court concludes that the core elements of that theory are alleged such that Romero's violations of the UTPCPL can be imputed to KLG.

Importantly, with respect to this claim, only those allegations that are based on Romero's misconduct may survive. Specifically, the allegations of subparagraphs 70(c), (d), and (i) of the Amended Complaint are supported by factual averments relating to Romero's actions. *See* Am. Compl. ¶¶ 31, 28, 27. However, the Amended Complaint includes no factual allegations relating

6

to Romero's conduct that could support the remaining allegations in Count I—those set forth in subparagraphs 70(a), (b), (e), (f), (g), and (h).[2] Am. Compl. ¶ 70.

The claims against the individual defendants in Count I are dismissed.[3] The remaining claim against KLG survives based on the allegations of subparagraphs 70(c), (d), and (i), because those allegations are supported by factual allegations relating to Romero's misconduct and may be imputed to KLG under the theory of *respondeat superior*.

### C. Count II: Common Law Fraud

Count II alleges that all defendants made various false or misleading statements in order to induce plaintiff to purchase or continue to retain their services. In their Motion, defendants argue that Count II must be dismissed because it fails to allege misrepresentation of a past or present material fact. The Court agrees; however, the Court concludes that plaintiff's Response identifies an alternative basis for the fraud claim, not included in Count II but alleged elsewhere in the Amended Complaint, such that Count II can survive. Therefore, the Court denies defendants' Motion as to Count II.

#### *1. Allegations listed within Count II*

Defendants argue that the Amended Complaint fails to allege that defendants made a factual misrepresentation, because it alleges only that defendants made statements of opinion or statements relating to the future. "It is well-established that a cause of action for fraud must allege a misrepresentation of a past or present material fact." *Krause v. Great Lakes Holdings,*

---

[2] Except for their argument that *Beyers* precludes liability in this case, defendants do not challenge the allegations in Count I.

[3] The Amended Complaint alleges only that the individual defendants were "employed by" KLG; it does not specify their management role, if any, at KLG. Am. Compl. ¶¶ 17, 18. However, the Amended Complaint alleges that KLG is a limited liability company. Am. Compl. ¶ 15. Therefore, even if the individual defendants held management level positions at KLG, they would be shielded from personal liability. 15 Pa. C.S.A. § 8834.

*Inc.*, 563 A.2d 1182, 1187 (Pa. Super. 1989). "Under Pennsylvania law, promises to do future acts do not constitute a valid fraud claim." *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments*, 951 F.2d 1399, 1409 (3d Cir. 1991). In addition, "a statement to constitute a false and fraudulent representation must be a representation of fact, and not a mere expression of opinion, belief, or prediction." *Penn-Allen Broad. Co. v. Traylor*, 133 A.2d 528, 532 (Pa. 1957).

The Court concludes that subparagraphs 76(b) and (c) in Count II fail to allege a factual misrepresentation. Am. Compl. ¶ 76. Subparagraph 76(b) alleges that "defendants falsely represented that they had a 'high success rate in obtaining loan modifications.'" Am. Compl. ¶ 76. The Court concludes that the term "high success rate" is an opinion, and not a factual representation (in contrast with a more concrete representation, e.g., a "90 percent success rate"). Subparagraph 76(c) alleges that "defendants falsely represented that plaintiff was 'qualified or was otherwise likely to obtain a loan modification approval.'" Am. Compl. ¶ 76. The alleged representation contains both an opinion (that plaintiff was subjectively "qualified") and a promise regarding future events (that plaintiff was "likely to obtain a loan modification approval"). Neither part of subparagraph 76(c) constitutes a factual misrepresentation. Therefore, subparagraphs 76(b) and (c) cannot support a fraud claim.

In contrast, subparagraphs 76(a) and (d) allege that defendants made a fraudulent misrepresentation. Subparagraph 76(a) alleges that "defendants falsely represented that they were loan modification specialists." Am. Compl. ¶ 76. The Court concludes that the term "specialist" is sufficiently concrete to constitute a misrepresentation of fact. Subparagraph 76(d) alleges that "defendants falsely represented that plaintiff's file 'would be worked on by attorneys.'" Am. Compl. ¶ 76. Although the alleged representation is a promise of future action,

8

that representation could possibly form the basis for a claim of fraud in the inducement—that is, a claim that defendants "made false representations that induced [plaintiff] to agree to the contract." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 205 (Pa. 2007).

However, subparagraphs 76(a) and (d) are contradicted by the Amended Complaint's factual allegations. Subparagraph 76(a) is flatly contradicted by the very first paragraph of the Amended Complaint, which alleges that defendants "are attorneys that specialize in attempting to obtain loan modifications." Am. Compl. ¶ 1. As to subparagraph 76(d), outside of the skeletal allegation in Count I, the Amended Complaint does not specifically allege that anyone told plaintiff that an attorney would work on her case. Further, the Amended Complaint does not allege that such a representation, if any, was false, because it does not allege that no attorney worked on her case. Indeed, the Amended Complaint alleges that the individual defendants, who are attorneys, *did* work on her case by, *inter alia*, filing an Answer to the Foreclosure Complaint. Am. Compl. ¶ 46. Therefore, subparagraphs 76(a) and (d) cannot support the fraud claim because they are not supported by factual allegations.

### 2. *Additional factual allegations identified in plaintiff's Response*

Plaintiff argues in her Response that three additional factual allegations, not specifically set forth in Count II but incorporated by reference therein, support her fraud claim. Resp. at 14–15; Am. Compl. ¶ 75. The Court rejects two of these allegations as possible bases for a fraud claim. However, the Court concludes that the allegations of the Amended Complaint relating to a fraudulent misrepresentation based on defendants' failure to submit a loan modification application on plaintiff's behalf support the fraud claim.

The Court first concludes that two of the factual allegations to which plaintiff points in her Response cannot support a fraud claim. First, the Amended Complaint alleges that

9

defendants falsely informed plaintiff that Santander would not consider her application if it included outdated documents. Am. Compl. ¶¶ 43–44. The Court concludes that this is a statement about the lender's future behavior, not a factual misrepresentation. *See Krause*, 563 A.2d at 1187. Second, the Amended Complaint alleges that defendants fraudulently suppressed the fact that her mortgage company had filed a Motion for Summary Judgment, that the Motion was granted, and that judgment was entered against plaintiff. Am. Compl. ¶¶ 51, 55, 56. However, to state a fraud claim, a plaintiff must allege, *inter alia*, that the defendant made a factual misrepresentation "with knowledge or belief of its falsity" and "with the intention that the other party rely thereon." *Agathos v. Starlite Motel*, 60 F.3d 143, 147 (3d Cir. 1995). The Amended Complaint does not allege that defendants were aware of the Motion, the court's Order, or that judgment was entered; nor does it allege that defendants intentionally withheld that information. Therefore, these additional allegations cannot support a fraud claim.

The Court concludes that the third allegation to which plaintiff points suffices to support the fraud claim. The Amended Complaint alleges that defendants falsely informed plaintiff that they had submitted a loan modification application to Santander on her behalf in order to ensure that plaintiff remained defendants' client. Am. Compl. ¶¶ 54, 59–60, 78. Specifically, on December 15, 2014, defendants informed plaintiff that they had submitted an application for a loan modification to Santander on her behalf. Am. Compl. ¶ 54. However, sometime after December 27, 2014, plaintiff contacted Santander, and Santander reported that it had not received any application from defendants. Am. Compl. ¶¶ 57–60. Indeed, Santander had not been contacted by defendants since "January or February 2014," when defendants had informed Santander that they were representing plaintiff. Am. Compl. ¶¶ 59–60. Count II incorporates the above allegation by reference and alleges that defendants' misrepresentations were made "with

10

the intent . . . to convince Plaintiff to remain as a client." Am. Compl. ¶¶ 75, 78. The Court concludes that the Amended Complaint therefore alleges a misrepresentation of fact sufficient to support the fraud claim as to this issue.

Because the Amended Complaint alleges that defendants fraudulently misrepresented to plaintiff that they had submitted a loan modification application to Santander on her behalf, the fraud claim survives. The Court therefore denies defendants' Motion as to Count II with respect to this issue and grants the Motion in all other respects.

### D.  Count III: Bankruptcy Abuse Prevention and Consumer Protection Act

Count III asserts that all defendants made false and misleading statements in violation of the BAPCPA. 11 U.S.C. § 526(a)(2). Defendants argue that they are not a "debt relief agency" for purposes of this case, and are therefore not liable under the BAPCPA. The Court agrees.

"The term 'debt relief agency' means any person who provides any bankruptcy assistance to an assisted person." 11 U.S.C. § 101(12)(a). In turn, "bankruptcy assistance" means

> any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title.

11 U.S.C. § 101(4A). "This title," of course, refers to the BAPCPA generally, and so the final clause limits the definition of bankruptcy assistance to activities related to a bankruptcy case or proceeding. Generally, "attorneys are debt relief agencies when they provide qualifying services," *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 239 (2010), and KLG holds itself out as a "debt relief agency." Am. Compl. ¶ 85.

Defendants argue that, although they are debt relief agency in some situations, they cannot be liable under the facts of this case because they did not provide "bankruptcy assistance"

11

to plaintiff. Specifically, defendants state that the last clause of the definition of "bankruptcy assistance"—"with respect to a case or proceeding under this title"—limits the definition to situations where a "debt relief agency" was actually assisting someone in a bankruptcy proceeding. Mot. at 19–21. On this issue, the Amended Complaint does not allege that defendants provided "bankruptcy assistance" to plaintiff.

Plaintiff contends that the term "bankruptcy assistance" should be read more broadly. Specifically, plaintiff argues that the clause appearing at the end of the definition of that term ("with respect to a case or proceeding under this title") should be understood to limit only the clause immediately preceding it ("providing legal representation"). Under plaintiff's interpretation, the earlier clauses would not be constrained by the last sentence of the definition. Therefore, plaintiff urges that defendants can be liable for providing "services . . . with the express or implied purpose of providing information, advice, [or] counsel," even if such services were wholly unrelated to a bankruptcy proceeding. Resp. at 13.

The Court rejects plaintiff's argument. Plaintiff's interpretation would permit liability in any context where someone provided "information, advice, and counsel," even if those actions were completely unrelated to a bankruptcy proceeding. It makes little sense to read the BAPCPA, which is plainly aimed at regulating bankruptcy proceedings, to allow a claim such as this to proceed in virtually any context. Because the Amended Complaint does not allege that defendants provided bankruptcy assistance to plaintiff, the Court concludes that defendants are not a debt relief agency for purposes of this case. Therefore, the Court grants defendants' Motion as to Count III.

### E. Count IV: Legal Malpractice

Count IV alleges that Keaveney and Thomas "failed to exercise the degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community." Am. Compl. ¶ 90. In Pennsylvania, a plaintiff alleging professional malpractice is required to file a Certificate of Merit ("COM") including a written statement from a licensed professional stating that there is a "reasonable probability" that the defendants' conduct fell outside acceptable professional standards, and that said conduct caused plaintiff's harm. Pa. R.C.P. 1042.3(a). In this case, plaintiff timely filed a "Certificate of Counsel" ("plaintiff's COM") authored by Thomas Wilkinson, a partner at Cozen O'Connor. Pl.'s Certificate of Counsel ("Pl.'s COM") (Doc. No. 6, filed December 9, 2016). Defendants argue that plaintiff's COM is inadequate for two reasons. The Court rejects both of defendants' arguments.

First, defendants argue that plaintiff's COM fails procedurally because plaintiff filed only one COM, whereas the statute requires that "[a] separate certificate of merit shall be filed as to each licensed professional against whom a claim is asserted." Pa. R.C.P. 1042.3(b)(1). However, "[t]o the extent that the purpose of the COM requirement is to ensure that professional liability claims are meritorious, [a single COM addressing multiple defendants] satisfie[s] that purpose." *Ramos v. Quien*, 631 F. Supp. 2d 601, 613 (E.D. Pa. 2008). Plaintiff's COM states outright that it is intended to address the allegations against both individual defendants. Pl.'s COM. Therefore, the Court concludes that plaintiff's COM suffices to address the conduct of both individual defendants.

Second, defendants argue that plaintiff's COM fails because it does not engage in independent review of the facts of the case. Rather, plaintiff's COM "assumes the factual background referenced in the Complaint is accurate." Pl.'s COM. However, Rule 1042 does not

require that the COM be executed by someone with actual knowledge of the facts of the case, and defendants point to no case law supporting dismissal on this basis. Rather, courts have dismissed cases only when the plaintiff made "no effort" to comply with Rule 1042. *Womer v. Hilliker*, 908 A.2d 269, 278 (Pa. 2006). Even where a plaintiff's COM was not timely filed, one court declined to dismiss the case because plaintiff's conduct "clearly did not amount to a 'wholesale failure to take any actions.'" *Ramos v. Quien*, 631 F. Supp. 2d 601, 612 (E.D. Pa. 2008). Following *Ramos*, the Court concludes that plaintiff's Certificate of Counsel evinces plaintiff's effort to comply with the rule, and denies defendants' Motion.

The Court's decision is supported by the context of the rule. The Pennsylvania Rules of Civil Procedure "shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable," and the trial court "may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa. R.C.P. 126. The Court concludes that the defects in plaintiff's COM, discussed *supra*, are merely procedural, and that defendants will not be prejudiced by any such defects. The Court therefore denies defendants' Motion as to Count IV.

      F.  <u>Punitive Damages and Attorney Fees</u>

Finally, defendants argue that plaintiff's demands for punitive damages and attorney fees should be "dismissed." The Court interprets both requests as Motions to Strike those demands.

In Pennsylvania, "[p]unitive damages are appropriate when the act committed . . . constitutes 'outrageous conduct.'" *Donaldson v. Bernstein*, 104 F.3d 547, 556–57 (3d Cir. 1997). Outrageous conduct is conduct that "imports insult or outrage, and is committed with a view to oppress or is done in contempt of plaintiffs' rights." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 235 (3d Cir. 1997). Plaintiff alleges that although she paid defendants more than

$8,000 to assist her with her foreclosure, defendants failed to file certain documents on her behalf with the court and with Santander. Whether the alleged conduct is outrageous is a fact question, *McClellan v. Health Maint. Org. of Pennsylvania*, 604 A.2d 1053, 1061 (Pa. Super. 1992), and the Court concludes that it would be premature to dismiss the demand for punitive damages at this stage. Therefore, the Court denies defendants' Motion to Strike plaintiff's request for punitive damages.

Defendants next argue that plaintiff's request for attorney fees should be struck from Counts II and IV, and the Court agrees. Pennsylvania follows the "American Rule," which requires that parties are responsible for their own costs absent a statutory fee-shifting provision or court exception. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 455 (E.D. Pa. 1995). Plaintiff identifies no applicable exception to the American Rule, and concedes that she can only obtain attorney fees if she succeeds under Counts I or III. Resp. at 17. Therefore, the Court grants defendants' Motion to Strike plaintiff's demand for attorney fees under Counts II and IV.

## IV. CONCLUSION

Defendants' Motion to Dismiss Count I is granted as to the individual defendants, and denied as to KLG. Defendants' Motion to Dismiss Count II is granted in part and denied in part as discussed *supra*. Defendants' Motion to Dismiss Count III is granted. Defendants' Motion to Dismiss Count IV is denied. Defendants' Motion to Strike plaintiff's demand for punitive damages is denied, and defendants' Motion to Strike plaintiff's demand for attorney fees under Counts II and IV is granted. What remains in the case is Count I, against KLG only; Count II, based on defendants' fraudulent misrepresentation regarding their failure to submit a loan modification application on plaintiff's behalf; and Count IV.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The Court cannot say that all of the dismissed claims are futile on the present state of the record. Thus, the dismissal of plaintiffs' claims is without prejudice to plaintiffs' right to file and serve a second amended complaint within twenty days if warranted by the facts and the applicable law set forth in this Memorandum.

An appropriate order follows.